# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Civil Action No. 17-cv-0507-WJM-MJW

QFA ROYALTIES, LLC,
THE QUIZNOS MASTER, LLC,

    Plaintiffs,

v.

ZT INVESTMENTS, LLC, and
THOMAS KAMAU,

    Defendants.

## ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT, AND ENTERING PERMANENT INJUNCTION

This is a dispute between a franchisor and a former franchisee. Plaintiff QFA Royalties, LLC, "is the franchisor of the network of franchised Quiznos Sub restaurants." (ECF No. 36 at 3, ¶ 1.) Plaintiff The Quiznos Master, LLC, "owns and licenses to QFA the intellectual property used in connection with QFA's franchising program." (*Id.* ¶ 2.) The Court will refer to the two Plaintiffs collectively as "Quiznos." The defendants are ZT Investments, LLC ("ZTI"), a Missouri limited liability company, and its owner, Thomas Kamau ("Kamau"). Quiznos accuses Defendants of continuing to operate a restaurant that is, in effect, an unauthorized Quiznos franchise.

Kamau has appeared and defended *pro se*. (*See* ECF No. 18.) ZTI, which may only appear through counsel, has not appeared or defended. The Clerk entered default against ZTI on April 24, 2017. (ECF No. 24.) Quiznos moved for default judgment on May 15, 2017 ("Default Judgment Motion"). (ECF No. 31.) The Court found that full

evaluation of that motion would take some time, but in the meantime, the Court partially granted Quiznos' request for a preliminary injunction. (*See* ECF No. 39.)

The Court is now prepared to rule on Quiznos' Default Judgment Motion, and the Court will grant the motion in part and deny it in part, as explained below. Also before the Court is Kamau's recently filed "request for dismissing this case without prejudice against ZT Investment[s] and Thomas Kamau." (ECF No. 53.) To the extent Kamau filed this document on behalf of ZTI, it will be stricken because ZTI is a business entity and can only appear through an attorney, which Kamau is not; and to the extent Kamau files on his own behalf, it will be denied.

## I. DEFAULT JUDGMENT ANALYSIS

### A. Legal Standard

Default must enter against a party who fails to appear or otherwise defend a lawsuit. Fed. R. Civ. P. 55(a). Pursuant to Rule 55(b)(1), default judgment must be entered by the Clerk of Court if the claim is for "a sum certain"; in all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "[D]efault judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection." *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

However, "a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Greenwich Ins. Co. v. Daniel Law Firm*, 2008 WL 793606, at *2 (D. Colo. Mar. 22, 2008)

2

(internal quotation marks omitted). Before granting a motion for default judgment, the Court must take several steps. First, the Court must ensure that it has personal jurisdiction over the defaulting defendant and subject matter jurisdiction over the action. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986). Next, the Court should consider whether the well-pleaded allegations of fact—which are admitted by the defendant upon default—support a judgment on the claims against the defaulting defendant. *See Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, 2009 WL 765872, at *3 (D. Colo. Mar. 20, 2009) ("Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment.").

**B.    Allegations**

Quiznos licenses a number of registered trademarks to franchisees. (ECF No. 1 ¶¶ 13–18.) Quiznos has also licensed a distinct trade dress (*i.e.*, restaurant design and décor) to franchisees. (*Id.* ¶¶ 19–21.)

ZTI is a former Quiznos franchisee. (ECF No. 1 ¶ 5.) Kamau is a Missouri citizen and ZTI's 100% owner, and he "personally guaranteed [ZTI's] obligations under the franchise agreement." (*Id.* ¶ 6.)

Kamau became a Quiznos franchisee in June 2013 and thereby began operating a Quiznos in St. Louis, Missouri. (*Id.* ¶¶ 22–23.) Kamau later assigned his franchise agreement to ZTI. (*Id.* ¶ 24.) Under the Franchise Agreement between Quiznos and ZTI, ZTI undertook payment obligations to Quiznos (weekly royalties based on gross sales, marketing and promotion fees, regional advertising contributions, etc.) and also an obligation to protect Quiznos' confidential information, licensed methods, and so forth. (*Id.* ¶¶ 26–27.) The Franchise Agreement further imposed obligations on ZTI if

3

the Agreement terminated, including paying all sums due; ceasing to use any Quiznos intellectual property; ceasing to hold itself out as a Quiznos; returning all proprietary and confidential information; and assigning to Quiznos all telephone and other directory listings used in connection with the restaurant. (*Id.* ¶ 29.)

In October 2016, ZTI (presumably at Kamau's direction) abandoned its Quiznos franchise, leading Quiznos to terminate the Franchise Agreement. (*Id.* ¶¶ 33–34.) ZTI then began operating, in the same location, a restaurant named "Toasty Subs" (*id.* ¶ 35), or "Toasty Grill Subs," according to its marketing materials (*see* ECF No. 6-7). Toasty Subs, apart from the changed name, continued to operate effectively as a Quiznos, save for covering up or painting over signage or décor displaying Quiznos trademarks, and putting "Toasty Grill Subs" signage in its place. (ECF Nos. 6-8 & 6-9; ECF No. 1 ¶¶ 35–40.)

Quiznos has accordingly sued for trademark infringement, trade dress infringement, unfair competition, specific performance (*i.e.*, to comply with post-termination obligations under the Franchise Agreement), breach of contract, and breach of guaranty (against Kamau). (*Id.* at 10–15.)

**C.    Jurisdiction**

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Quiznos alleges various forms of trademark infringement under the Lanham Act. The Court has personal jurisdiction over ZTI because: (1) Kamau, when entering into the franchise agreement with Quiznos, expressly agreed that "the exclusive forum for disputes between [the parties] shall be a court of general jurisdiction located in Denver, Colorado, and each party waives any objection it might have to the personal jurisdiction of or venue in such courts" (ECF No. 6-2 § 21.1); and (2) ZTI assumed all of Kamau's

4

obligations under the franchise agreement through an explicit agreement by which Quiznos permitted Kamau to transfer his interest to ZTI (ECF No. 6-3 § 1(c); *see also id.* § 7 ("Any disputes arising out of this Consent Agreement shall be settled in accordance with the dispute resolution terms of the Franchise Agreement.")).

**D.     Merits**

Quiznos' allegations establish that ZTI is liable to Quiznos for violation of 15 U.S.C. § 1114(1) (trademark infringement), 15 U.S.C. § 1125(a)(1) (trade dress infringement and unfair competition), and breach of contract.

Quiznos has submitted two categories of damages to which it believes it is entitled.  First, Quiznos claims past-due amounts (including accrued interest) of $11,279.69.  (ECF No. 52 at 2; ECF No. 31-1 ¶¶ 2–3.)  This calculation encompasses royalties and advertising fund contributions that ZTI owed as of the Franchise Agreement's termination in October 2016.  (*Id.*)  The Court has no basis to question Quiznos' calculation and therefore will award this amount.

The second category of damages is future lost profits, which the Franchise Agreement addresses as follows:

> In the event this Agreement is terminated (i) by Franchisor based on Franchisee's default or (ii) due to the wrongful termination by Franchisee, the parties agree that it would be difficult, if not impossible, to determine the amount of damages that Franchisor would suffer.  Therefore, the parties agree that a reasonable estimate of damages is the net present value of the Royalties, Marketing and Promotion Fees, Local Advertising Fees, and Regional Advertising Fees that would have become due following any early termination of this Agreement for the period this Agreement would have remained in effect but for Franchisee's default. Royalties, Marketing and Promotion Fees, Local Advertising Fees, and Regional Advertising Fees for purposes of this Section shall be calculated based on the Restaurant's average monthly Gross Sales for the twelve (12) months

5

preceding the termination date.

(ECF No. 6-2 § 21.3.)  Using this formula and discounting the sum to present value, Quiznos calculates it is entitled to $204,928.49.  (ECF No. 52 at 2; ECF No. 31-1 ¶¶ 4–7.)  The Court has no basis to question Quiznos' calculation and therefore will award this amount.[1]

The injunctive relief to which Quiznos is entitled presents a more difficult question.  Quiznos first requests an injunction against the following:

> Using any of the Quiznos Marks and trade dress, or any trademark, service mark, logo, trade name, or elements of design and décor that is confusingly similar to the Quiznos Marks and trade dress;
>
> Otherwise infringing the Quiznos Marks or trade dress using any similar designation, alone or in combination with any other components, or any other similar design or décor, alone or in combination with other components;
>
> Passing off any products or services as those of authorized Quiznos' franchisees or as genuine Quiznos' products or services . . . .

(ECF No. 31-3 at 3.)  The Court has already awarded this relief as part of its preliminary injunction (*see* ECF No. 39 at 4, ¶ 2) and therefore finds it appropriate to include the same provisions as part of a permanent injunction.

Quiznos next requests an injunction against the following:

> Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their business, products or services;
>
> Causing a likelihood of confusion or misunderstanding as to

---

[1] Quiznos originally claimed an additional $30,421.23 in "unfair competition" damages. (ECF No. 31 at 11.)  The Court then asked for clarification whether any of Quiznos' various damages calculations overlapped.  (ECF No. 46.)  Quiznos responded by asserting that its unfair competition damages represent a distinct injury, but further stated that it would withdraw its request for that category of damages.  (ECF No. 52 at 1–2.)

> their affiliation, connection or association with Quiznos, or with any of its products or services; and
>
> Unfairly competing with Quiznos in any manner.

(ECF No. 31-3 at 3.) Under the circumstances, this amounts to an impermissible "obey the law" injunction. *See, e.g.*, *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) ("injunctions simply requiring the defendant to obey the law are too vague to satisfy Rule 65"). The Court will not include this language in a permanent injunction.

Quiznos further requests a specific performance injunction that ZTI "[c]eas[e] to operate a competitive business within 5 miles of 91 Concord Plaza in Saint Louis, Missouri, or within 5 miles of any other Quiznos restaurant (existing at the date [ZTI] begins to comply with [the Court's order]), for a period of two years after [ZTI] begins to comply with [the Court's order]." (ECF No. 31-3 at 3.) This is based on the following portion of the Franchise Agreement:

> For a period of two (2) years from the effective date of termination or expiration of this Agreement for any reason, or the date on which Franchisee and all other Bound Parties begin to comply with this Section, whichever is later, neither Franchisee nor any other Bound Party shall . . . operat[e] [a competitive business] within a five (5) mile radius of the former Franchised Location (including at the former Franchised Location) or within a five (5) mile radius of any other QUIZNOS Restaurant existing on the later of the effective date of termination or expiration of this Agreement or the date on which Franchisee and all other Bound Parties begin to comply with this Section.

(ECF No. 6-2 § 20.3.)

Colorado law governs the Franchise Agreement. (*See id.* § 21.1.) "[C]ovenants not to compete are disfavored in Colorado," including in franchise agreements, "and the exceptions to the general rule are narrowly construed." *Gold Messenger, Inc. v.*

7

*McGuay*, 937 P.2d 907, 910 (Colo. App. 1997). Quiznos has not attempted to demonstrate that such a covenant is reasonable under the circumstances, instead relying on cases in other contexts. (*See* ECF No. 6 at 12.) Moreover, "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts," regardless of the type of case. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006). The Court finds that Quiznos has not sufficiently shown irreparable harm in light of the damages to which it is entitled, and the Court will not grant this request for injunctive relief.

Quiznos additionally requests a specific performance injunction as to the following:

> Returning to QFA all proprietary and confidential information and material, including, without limitation, Quiznos proprietary operations manual;
>
> Ceasing to use or disclose Quiznos' proprietary and confidential information, including any of the information constituting Quiznos licensed methods . . . .

(ECF No. 31-3 at 3.) An injunction in this regard is appropriate, and so the Court will grant this request.

Finally, Quiznos requests a specific performance injunction, closely related to the non-competition clause above, that requires ZTI to

> [n]otify[] the telephone company and all telephone directory publishers of the termination of [ZTI's] right to use any telephone number and any regular, classified, or other telephone directory listing associated with the Quiznos Marks and to authorize transfer of such number to Quiznos or its designees.

This request corresponds to a post-termination requirement in the Franchise Agreement. (ECF No. 6-2 § 18.7(h).)

In light of Quiznos' allegation that ZTI's employees have continued to represent that Toasty Subs is a Quiznos (ECF No. 1 ¶¶ 38–40), the Court will order ZTI not to hold itself out in any manner as a Quiznos (including via telephone) and to inform all telephone directories that Toasty Subs is no longer a Quiznos and direct the telephone directories to update their records accordingly. Beyond this, the Court again finds that Quiznos has not sufficiently shown irreparable harm, and the Court in its discretion therefore denies further injunctive relief of this nature.[2]

## II. KAMAU'S MOTION TO DISMISS

As noted above, Kamau has filed a "request for dismissing this case without prejudice against ZT Investment[s] and Thomas Kamau." (ECF No. 53.) This motion argues that Quiznos failed to timely respond to the Court's order seeking clarification regarding Quiznos' default judgment motion. (*Id.* at 1.) Kamau therefore requests dismissal for lack of prosecution. (*Id.* at 2.)

The premise of Kamau's request is simply incorrect. Quiznos' deadline to file a clarification was November 3, 2017 (*see* ECF No. 46), and that is also the date on which Quiznos filed its clarification (*see* ECF No. 52). Its certificate of service says that Quiznos' counsel mailed the document to Kamau (*id.* at 4), but perhaps Kamau did not receive it as of the date he mailed his request to this Court. In any event, the request is meritless and will be denied as to Kamau. As to ZTI, once again, the request must be stricken because ZTI is not a natural person and therefore can only appear in this Court

---

[2] The Court also notes that the preliminary injunction required ZTI to refrain from "[p]assing off any products or services as those of authorized Quiznos franchisees or as genuine Quiznos products or services" (ECF No. 39 at 4, ¶ 2(c)), and that the Court has not been made aware of any potential violation of this portion of the injunction (or any other portion). Thus, it appears that the Court can confidently expect compliance with a permanent injunction.

through an attorney, which it does not have.

### III. CONCLUSION

Accordingly, for the reasons set forth above, the Court ORDERS as follows:

1. Plaintiffs' Default Judgment Motion (ECF No. 31) is GRANTED IN PART and DENIED IN PART as stated above;

2. The Clerk shall enter default judgment in favor of Plaintiffs against Defendant ZT Investments, LLC, in the amount of $216,208.18, with postjudgment interest as provided by statute; and

3. Defendant ZT Investments, LLC, and its officers, agents, servants, employees, attorneys, and any successors (together, "Enjoined Parties"), are PERMANENTLY ENJOINED as follows:

    a. The Enjoined Parties may not

        i. Use any of the Quiznos marks and trade dress, or any trademark, service mark, logo, trade name, or elements of design and décor that is/are confusingly similar to the Quiznos marks and trade dress;

        ii. Otherwise infringe the Quiznos marks or trade dress using any similar designation, alone or in combination with any other components, or any other similar design or décor, alone or in combination with other components;

        iii. Pass off any products or services as those of authorized Quiznos franchisees or as genuine Quiznos products or services; and

        iv. Represent themselves (or any one of them) through any medium of

communication to be a Quiznos franchisee or otherwise affiliated with Quiznos;

b. No later than **December 15, 2017**, Defendant ZT Investments, LLC, must

  i. Return to Plaintiffs all proprietary and confidential information and material, including, without limitation, Quiznos proprietary operations manual;

  ii. Cease to use or disclose Plaintiffs' proprietary and confidential information, including any of the information constituting Quiznos licensed methods; and

  iii. Inform all telephone directories that the restaurant formerly operated as a Quiznos franchise by ZT Investments, LLC, is no longer a Quiznos franchise, and direct that the telephone directories be updated accordingly.

4. Should Plaintiffs form a good faith belief that ZT Investments, LLC, is in contempt of the foregoing injunction, Plaintiffs shall not file for any form of relief in this Court without (a) giving written notice to ZT Investments, LLC, of the ways in which Plaintiffs believe it to be in contempt; (b) explaining, in that same written notice, the actions that ZT Investments, LLC, must take to satisfy Plaintiffs that it is no longer in contempt; and (c) allowing ZT Investments, LLC, a minimum of 30 days to comply;

5. Defendant Kamau's "request for dismissing this case without prejudice against ZT Investment[s] and Thomas Kamau" (ECF No. 53) is DENIED as to Kamau and STRICKEN as to ZT Investments, LLC; and

6. The Clerk, in addition to mailing a copy of this order to Kamau, shall mail a copy of ECF No. 52.

Dated this 17th day of November, 2017.

BY THE COURT:

_____
William J. Martinez
United States District Judge